IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED

87 NOV 25 PM 2:33

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 87-40070 |
| | ) | |
| v. | ) | Title 21 |
| | ) | Sections 846 and 848 |
| RANDY THOMAS LANIER, | ) | |
| BENJAMIN BARRY KRAMER, | ) | Title 18 |
| GEORGE PAUL BROCK, | ) | Section 371 |
| EUGENE ALBERT FISCHER, | ) | |
| WILLIAM R. PALUMBO, | ) | (Supersedes Case No. 87-40008 |
| KAY DEE BELL, JR., and | ) | as to RANDY THOMAS LANIER only) |
| ROBERT ELLSWORTH WOOD, JR., | ) | |
| | ) | (Supersedes Case No. 87-40040 |
| Defendants. | ) | as to BENJAMIN BARRY KRAMER) |

INDICTMENT

THE GRAND JURY CHARGES:

COUNT 1

That from in or about March 1980, and continuing thereafter up to and including February 1987, the exact dates being unknown to the Grand Jury, in St. Clair, Madison, and Jefferson Counties, within the Southern District of Illinois, Kentucky, Florida, California, West Virginia, Louisiana, New York, Pennsylvania, Michigan, Indiana, and elsewhere, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER, the defendants herein, knowingly and intention- ally did engage in a Continuing Criminal Enterprise in that they did violate Title 21, United States Code, Sections 841(a)(1), 952(a), and 846 that is, distributing and possessing with intent to distribute marihuana, importing marihuana, and conspiring to distribute marihuana, a Schedule I Controlled Substance, which

/

violations were part of a continuing series of violations of said statutes undertaken by each defendant in concert with at least five other persons, with respect to whom each defendant occupied a position of organizer, supervisor, or manager, which violations include three or more of the violations set forth in count 2 of this indictment and in the following paragraphs A through R:

A. In or about January 1982, in Pompano Beach, Florida, RANDY THOMAS LANIER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 800 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

B. In or about March or April 1982, in Pompano Beach, Florida, RANDY THOMAS LANIER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 800 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

C. In or about July or August 1982, in Pompano Beach, Florida, RANDY THOMAS LANIER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 800 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

D. In or about July 1982, in Melbourne, Florida, BENJAMIN BARRY KRAMER and RANDY THOMAS LANIER did distribute and posses with intent to distribute a Schedule I controlled substance, that is, 15,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

E. In or about July 1982, BENJAMIN BARRY KRAMER and RANDY THOMAS LANIER did knowingly and intentionally import into the United States, that is Melbourne, Florida, from a place outside thereof, a controlled substance, that is approximately 15,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

F. In or about August 1982, in Melbourne, Florida, BENJAMIN BARRY KRAMER and RANDY THOMAS LANIER did distribute and posses with intent to distribute a

Schedule I controlled substance, that is, approximately 18,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

G. In or about August 1982, BENJAMIN BARRY KRAMER, and RANDY THOMAS LANIER, did knowingly and intentionally import into the United States, that is Melbourne, Florida, from a place outside thereof, a controlled substance, that is approximately 18,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

H. In or about November 1982, in New York, New York, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 35,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

I. In or about November 1982, BENJAMIN BARRY KRAMER, RANDY THOMAS LANIER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER did knowingly and intentionally import into the United States, that is New York, New York, from a place outside thereof, a controlled substance, that is approximately 35,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

J. In or about March or April 1983, in New York, New York, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER, did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 130,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

K. In or about March or April 1983, BENJAMIN BARRY KRAMER, RANDY THOMAS LANIER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER, did knowingly and intentionally import into the United States, that is New York, New York, from a place outside thereof, a controlled substance, that is approximately 130,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

L. In or about April 1984, in San Francisco, California, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER, did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 165,000

pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

M.   In or about April 1984, BENJAMIN BARRY KRAMER, RANDY THOMAS LANIER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER, did knowingly and intentionally import into the United States, that is San Francisco, California, from a place outside thereof, a controlled substance, that is approximately 165,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

N.   In or about March or April 1984, in Pompano Beach, Florida, RANDY THOMAS LANIER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 800 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

O.   In or about April 1985, in New Orleans, Louisiana, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 150,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

P.   In or about April 1985, BENJAMIN BARRY KRAMER, RANDY THOMAS LANIER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER did knowingly and intentionally import into the United States, that is New Orleans, Louisiana, from a place outside thereof, a controlled substance, that is approximately 150,000 pounds of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 952(a) and 960(a)(1).

Q.   On or about November 12, 1986, in San Francisco, California, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEROGE PAUL BROCK, and EUGENE ALBERT FISCHER did distribute and possess with intent to distribute a Schedule 1 controlled substance, that is, approximately 137,000 pounds of marihuana, in violation of Title 21, United States Code, Section 841(a)(1).

R.   On or about November 12, 1986, BENJAMIN BARRY KRAMER, RANDY THOMAS LANIER, GEORGE PAUL BROCK, and EUGENE ALBERT FISCHER did knowingly and intentionally import into the United States, that is San Francisco, California, from a place outside thereof, a controlled substance, that is approximately 137,000 pounds of marihuana, a Schedule I controlled substance, in

violation of Title 21, United States Code, Section
952(a) and 960(a)(1).

from which continuing series of violations the defendants
obtained substantial income and resources to which the United
States is entitled to forfeiture.

The Grand Jury further charges with respect to Count 1:

1. That RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE
PAUL BROCK, and EUGENE ALBERT FISCHER are each principal admin-
istrators, organizers and leaders of the enterprise described
herein and each is one of several such principal administrators,
organizers, and leaders; and

2. (a) That the violation referred to in paragraphs Q and
R of this count of the indictment involved at least 30,000
kilograms of marihuana; and

(b) That the enterprise described herein in which RANDY
THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK and
EUGENE ALBERT FISCHER were each one of several principal admin-
istrators, organizers, and leaders, received in excess of ten
(10) million dollars in gross receipts during the period from
November 25, 1986, to November 23, 1987, for the importation and
distribution of marihuana as described herein;
all in violation of Title 21, United States Code, Section
848(b).

## FORFEITURE

Upon conviction of a defendant of engaging in a continuing criminal enterprise as set forth in this count (Count 1), in violation of Title 21, United States Code, Section 848(b), the United States is entitled to forfeiture of, and the defendant will forfeit to the United States all profits and proceeds of profits obtained by him in such enterprise, and shall forfeit his interest in, claim against, any and all property and contractual rights of any kind affording a source of influence over such enterprise, including but not limited to the following described property, profits and proceeds of profits, interest, claims, and contractual right of:

RANDY THOMAS LANIER

1. $250,000 delivered to Max S. Moss for investment in Commercial Factors, Encino, California on or about August 1, 1983.

2. $250,000 delivered to Max S. Moss for investment in Alden Capital, Encino, California, on or about August 1, 1983.

3. Sixty (60) million dollars received by RANDY THOMAS LANIER, constituting proceeds received as a result of the violation alleged in this count.

BENJAMIN BARRY KRAMER

1. Sixty (60) million dollars received by BENJAMIN BARRY KRAMER, constituting proceeds received as a result of the violation alleged in this count.

GEORGE PAUL BROCK

1. Thirty (30) million dollars received by GEORGE PAUL BROCK, constituting proceeds received as a result of the violation alleged in this count.

EUGENE ALBERT FISCHER

1. Thirty (30) million dollars received by EUGENE ALBERT FISCHER, constituting proceeds received as a result of the violation alleged in this count.

## COUNT 2

From in or about March 1980, and continuously thereafter until in or about February 1987, the exact dates being unknown to the Grand Jury, in Jefferson, St. Clair, and Madison Counties, within the Southern District of Illinois, Kentucky, Florida, California, West Virginia, Louisiana, New York, Pennsylvania, Michigan, Indiana, and elsewhere, RANDY THOMAS LANIER, BENJAMIN BARRY KRAMER, GEORGE PAUL BROCK, EUGENE ALBERT FISCHER, WILLIAM R. PALUMBO, KAY DEE BELL, JR., ROBERT ELLSWORTH WOOD, JR., defendants herein, did conspire and agree with each other, with unindicted co-conspirators Conrad C. Ingold, Clifford James Rylands, Robert Reid Barbor, Jerry Lee Juenger, Frederick Eugene Crook, Charles Victor Podesta, Ronald Harris Ball, Charles Theodore Ball, James Harold Blair, Carole Ann Young, Bryan P. Brown, Eugene Dayle Brown, Harold Greg Merrill, Rodney E. Carl, Jeffrey Ellis Tuchband, David Maurice Tobias, Roberto (a/k/a Robert) Faxas, Wayne Ballew, Dana Cox, and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute more than 1,000 pounds of marihuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

7

## COUNT 3

From in or about March 1980, and continuously thereafter until in or about March 1987, the exact dates being unknown to the Grand Jury, in Madison and St. Clair Counties, within the Southern District of Illinois, California, Florida, Kentucky, Indiana, Louisiana, Michigan, Missouri, New York, Pennsylvania, West Virginia, and elsewhere, RANDY THOMAS LANIER, the defendant herein, did conspire and agree, with unindicted co-conspirators Conrad C. Ingold, Clifford James Rylands, Robert Reid Barbor, Jerry Lee Juenger, Clarence Stanley Massie, James Thomas Massie, Dale Patrick Maloney, David Allen Neddeff, Charles Victor Podesta, Ronald Harris Ball, Charles Theodore Ball, James Harold Blair, Carole Ann Young, Bryan P. Brown, Eugene Dayle Brown, Harold Greg Merrill, Rodney E. Carl, Jeffrey Ellis Tuchband, David Maurice Tobias, Roberto (a/k/a Robert) Faxas, Dana Cox, and with others known and unknown to the Grand Jury:

1. To defraud the United States, in particular the Internal Revenue Service, by impeding, impairing, obstructing, and defeating its lawful government functions in the ascertainment, assessment and collection of the revenue, that is income taxes.

MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The defendant and other co-conspirators operated and directed a large marihuana smuggling organization in the Southern District of Illinois, Kentucky, Florida, California, West Virginia, Louisiana, New York, Pennsylvania, Michigan,

8

Indiana, Missouri and elsewhere.  The methods were perpetrated by the defendant herein and other co-conspirators in an attempt to conceal from the United States Government, in particular the Internal Revenue Service, the source and nature of their profits and income from the importation, distribution and storage of marihuana.  At all times pertinent hereto, the manner and means by which the objectives of the conspiracy were accomplished by the defendant and other co-conspirators, consisted of the following:

1.  The use of U.S. currency, money orders and cashier's checks to conceal from the Internal Revenue Service the money obtained from the sale of marihuana;

2.  The use of U.S. currency, money orders and cashier's checks to conceal from the Internal Revenue Service the identity of the parties involved in the distribution of marihuana;

3.  The use of U.S. currency, money orders and cashier's checks to avoid records being kept by banks of the receipt of cash obtained from the sale and or distribution of marihuana;

4.  The use of alias names to conceal the participants involvement in smuggling and selling marihuana;

5.  The use of alias names to conceal from the Internal Revenue Service the purchase of assets with money obtained from the sale of marihuana;

6.  The use of alias names to conceal the use of phones by participants to facilitate the sale and distribution of marihuana;

7.  The use of alias names to conceal from the Internal Revenue Service ownership and interest in real property; and

8.  The failure to report all income and the source of that income from smuggling, storing and or selling marihuana when returns were filed.

## PARTIES, PERSONS

At all relevant times,

1.  Defendant RANDY THOMAS LANIER organized controlled and directed a large scale marihuana smuggling and distribution enterprise.

2.  Charles Victor Podesta worked for RANDY THOMAS LANIER in arranging for and coordinating LANIER's marihuana smuggling enterprise by:

    a.  arranging for the distribution of the marihuana to LANIER's customers in the United States;

    b.  arranging for the collection of monies for LANIER in payment for the marihuana; and

    c.  assisting LANIER in concealing money and assets purchased with money obtained from the sale of marihuana.

3.  Ronald Harris Ball, Jeffrey Ellis Tuchband and David Maurice Tobias were major customers of LANIER and Podesta, purchasing tractor trailer load quantities of marihuana for distribution throughout the United States.

10

4. Charles Theodore Ball and Rodney E. Carl were customers of Ronald Harris Ball.

5. Carole Ann Young was a marihuana distributor for Ronald Harris Ball and also maintained records, assisted in collections of money and assisted in the concealment of assets obtained with money received from the sale of marihuana.

6. Bryan Paul Brown distributed marihuana obtained from Ronald Harris Ball and assisted in storing marihuana for Ronald Harris Ball.

7. Eugene Dayle Brown transported truckloads of marihuana for Ronald Harris Ball.

8. Harold Greg Merrill operated a marihuana warehouse in Warsaw, Kentucky, where tractor trailer loads of marihuana obtained by Ronald Harris Ball from RANDY THOMAS LANIER were received and distributed.

9. Roberto Faxas obtained tractor trailer loads of marihuana from RANDY THOMAS LANIER and Charles Victor Podesta through Jeffrey Ellis Tuchband and David Maurice Tobias. This marihuana was then sold to Dale Patrick Maloney.

10. Dana Cox was a multi-thousand pound marihuana customer of Dale Patrick Maloney.

11. James Harold Blair operated a marihuana warehouse in Florida, collected monies for the sale of marihuana, and assisted in transporting marihuana for Ronald Harris Ball.

11

## OVERT ACTS

In furtherance of the conspiracy, and to affect the objectives thereof, the following overt acts, among others were committed in the Southern District of Illinois, and elsewhere:

1.  In or about March 1980, Conrad C. Ingold traveled from New Orleans, Louisiana, to South Florida to make arrangements for purchasing marihuana from RANDY THOMAS LANIER.

2.  In 1980, Conrad C. Ingold purchased between 1,850 and 2,700 pounds of marihuana from RANDY THOMAS LANIER and paid LANIER between $555,000 and $810,000 in U.S. currency.

3.  During the first part of 1981, Conrad C. Ingold purchased two to three truckloads (approximately 800 pounds each) of marihuana from RANDY THOMAS LANIER.

4.  During the first part of 1981, Clarence Stanley Massie and Robert Reid Barbor, paid RANDY THOMAS LANIER, or Charles Victor Podesta, a/k/a Chuck, in LANIER's absence, more than $480,000 in U.S. currency for marihuana.

5.  During 1980 and 1981, Conrad C. Ingold distributed marihuana purchased from RANDY THOMAS LANIER to Earl Dean Bond, in St. Louis, Missouri, and to Bryan Paul Brown in Tickfaw, Louisiana.

6.  In 1981, Robert Reid Barbor traveled to South Florida and picked up a truckload of marihuana from RANDY THOMAS LANIER at the residence of Charles Victor Podesta.

7.  From in or about 1981 until early 1983, Robert Reid Barbor traveled to South Florida and picked up truckloads of

marihuana from Charles Victor Podesta, at Podesta's residence. Barbor delivered some of this marihuana to Earl Dean Bond in the Southern District of Illinois and St. Louis, Missouri.

8. From in or about 1981 until early 1983, Robert Reid Barbor transported currency payments from Conrad C. Ingold and Ingold's customers, including Earl Dean Bond in St. Louis, Missouri, to RANDY THOMAS LANIER and Charles Victor Podesta in South Florida.

9. In mid 1981, Conrad C. Ingold met Ronald Harris Ball in Southern Florida for the purpose of obtaining RANDY THOMAS LANIER's marihuana through Ronald Harris Ball.

10. In or about October 1981, Ronald Harris Ball caused a telephone to be installed at his residence, 5680 Pine Tree Road, Pompano Beach, Florida, in the name of "James Cayia."

11. In or about November 1981, Charles Victor Podesta leased a residence located at 7600 Lyons Road, Pompano Beach, Florida, in the name of "Charles De Carlo" and made monthly rent payments of $1,200 in the form of U.S. currency and/or money orders from November 1981 through July 1983.

12. On or about January 6, 1982, Charles Victor Podesta caused a telephone to be installed at his residence, 7600 Lyons Road, Pompano Beach, Florida, in the name of "Charles De Carlo."

13. In or about January 1982, Robert Reid Barbor picked up 800 pounds of marihuana at the residence of Charles Victor

Podesta, at Pompano Beach, Florida, and delivered the marihuana to Earl Dean Bond in the Southern District of Illinois.

14.   In the early spring of 1982, Clarence S. Massie picked up 800 pounds of marihuana from the residence of Charles Victor Podesta at 7600 Lyons Road, Pompano Beach, Florida, and delivered this marihuana to Earl Dean Bond in the Southern District of Illinois.

15.   In or about March 1982, James Harold Blair a/k/a "Jimbo" delivered approximately 7,500 pounds of marihuana to Dale Patrick Maloney in Niles, Michigan, and was paid $1,000,000 in U.S. currency as a down payment on the marihuana by Maloney.

16.   In or about March 1982, Dana Mark Cox purchased approximately 2,000 pounds of marihuana from Dale Patrick Maloney.

17.   On or about May 7, 1982, James Harold Blair rented a safe deposit box in Ft. Lauderdale, Florida, and during the period May 7, 1982, to February 19, 1985, BLAIR made 27 visits to the safe deposit box.

18.   During 1982, Conrad C. Ingold purchased approximately 5,600 pounds of marihuana from Ronald Harris Ball, paying him approximately $1,680,000 in U.S. currency.

19.   In the summer of 1982, Clifford James Rylands picked up 800 of the 5,600 pounds of marihuana mentioned in paragraph 18 from Charles Victor Podesta at Podesta's residence in Pompano Beach, Florida, and delivered the marihuana to Earl Dean Bond in St.  Louis, Missouri, who sold some of this marihuana to Jerry

14

Lee Juenger in Millstadt, Illinois, in the Southern District of Illinois.

20.   In or about July or August 1982, Roberto Faxas purchased approximately 2,000 pounds of marihuana from Jeffrey Ellis Tuchband and David Maurice Tobias using U.S. currency.

21.   In mid 1982, Roberto Faxas sold approximately 2,000 pounds of marihuana to Dale Patrick Maloney in Northern Pennsylvania.

22.   In the spring of 1983, Dale Patrick Maloney was contacted by Roberto Faxas concerning the purchase of marihuana.

23.   In or about March or April 1983, Jeffrey Ellis Tuchband and David Maurice Tobias sold a semi-trailer load of RANDY THOMAS LANIER marihuana (approximately 18,000 pounds) to Dale Patrick Maloney through Roberto Faxas.

24.   In or about March or April 1983, Billy Bohannon, a driver for Jeffrey Ellis Tuchband and David Maurice Tobias delivered 18,000 pounds of marihuana to Dale Patrick Maloney in Niles, Michigan.  Tuchband and Tobias later paid LANIER approximately $5,580,000 in U.S. currency for this marihuana.

25.   In or about January through March of 1983, Clarence S. Massie and Eugene Dayle Brown picked up truckloads of marihuana from a stash house near Allentown, Pennsylvania, operated by Ronald Harris Ball.  Massie delivered his load to Earl Dean Bond in St. Louis, Missouri.

15

26.   In or about March or April 1983, Eugene Dayle Brown delivered one of these truckloads from Allentown, Pennsylvania, to Conrad C.  Ingold in New Orleans, Louisiana.

27.   In or about March or April 1983, Conrad C. Ingold sold approximately 600 to 800 pounds of marihuana obtained from Eugene Dayle Brown to Bryan Paul Brown.

28.   In or about March or April 1983, Eugene Dayle Brown and Carole Ann Young picked up approximately 1,500 pounds of marihuana from an Allentown, Pennsylvania, "stash house" and delivered it to Robert Reid Barbor in West Virginia.

29.   During 1983, Conrad C. Ingold purchased between 3,600 pounds to 4,200 pounds of marihuana from Ronald Harris Ball at $350 per pound and paid Ball and Lanier's representative, Charles Victor Podesta, at Ball's direction, over $1,260,000 in U.S. currency.

30.   During the summer of 1983 to the spring of 1984, Clifford James Rylands transported U.S. currency on five occasions from Conrad C. Ingold's marihuana customers in West Virginia, Missouri, and the Southern District of Illinois, to Ingold in New Orleans, Louisiana.  On two of these occasions, Rylands transported some of this currency to Ronald Harris Ball, in South Florida.

31.   On several occasions in 1983, Carole Ann Young picked up payments of $100,000 to $150,000 each from Conrad C. Ingold in New Orleans, Louisiana, for Ronald Harris Ball.

16

32.    In or about 1983, Ronald Harris Ball rented a condominium at 1391 S. Ocean Boulevard, Suite 1108, Pompano Beach, Florida, in his wife's maiden name, Leslie Larkin, and made monthly rent payments of $600 (out of season), to $1,300 (in season), in the form of U.S. currency, from 1983 to January 1987.

33.    On or about June 29, 1983, Carole Ann Young rented a safe deposit box in Ft. Lauderdale, Florida, in her name, and on or about August 15, 1983, the name "Richard Young" (alias of Ronald Harris Ball) was added.

34.    On or about October 21 and 24, 1983, James Harris Blair made total deposits of $4,000 in U.S. currency to his personal checking account.

35.    On or about October 24, 1983, James Harris Blair rented a residence located at 3800 Lyons Road, Coconut Creek, Florida, which was used by Blair and Ronald Harris Ball, as a "stash house" for marihuana and to receive currency payments for marihuana.

36.    On or about October 25, 1983, James Harold Blair caused the utilities at his residence to be recorded in the name "J.E. Andrews."

37.    From in or about November 1983, to in or about April 1986, James Harold Blair made $1,000 rent payments each month for his residence at 3800 Lyons Road, Coconut Creek, Florida, in the form of two $500 postal money orders.

17

38.   On or about November 11, 1983, James Harold Blair caused a telephone to be installed at his residence, 3800 Lyons Road, Coconut Creek, Florida, in the name of Janet Schrager, a maiden name of Blair's wife.

39.   On or about December 20, 1983, Charles Theodore Ball a/k/a Ted was detained at Heathrow Airport, London, England, while carrying $150,000 in undeclared U.S. currency out of the United States.

40.   In or about late 1983 or early 1984, Ronald Harris Ball contacted Conrad C. Ingold for help in locating a warehouse to use in the distribution of a large load of marihuana that RANDY THOMAS LANIER and Ball were to smuggle into the country in the spring of 1984.

41.   In or about late 1983 or early 1984, Conrad C. Ingold arranged for Bryan Paul Brown to take Ronald Harris Ball to Warsaw, Kentucky, to see a large metal building located at the residence of Brown's half brother, Harold Gregory Merrill.

42.   Ronald Harris Ball paid Harold Gregory Merrill $5 per pound for all the marihuana stored and distributed through MERRILL's warehouse in 1984 and 1985.

43.   In or about March or April 1984, Eugene Dayle Brown and Carold Ann Young drove a truck pulling a horse trailer containing a load of marihuana to Harold Gregory Merrill's warehouse in Warsaw, Kentucky.   Of this marihuana, 700 to 750 pounds was loaded into a truck driven by Clarence S. Massie.

44.   In or about April 1984, RANDY THOMAS LANIER smuggled approximately 165,000 pounds of marihuana into the United States at San Francisco, California.

45.   In or about March or April 1984, Ronald Harris Ball gave Conrad  C. Ingold several telephone numbers in San Francisco, California, where Ingold could reach Ball while Ball was in San Francisco assisting RANDY THOMAS LANIER in unloading the approximate 165,000 pounds of marihuana.

46.   In or about April 1984, Rodney E. Carl arranged for truck drivers to transport approximately 25,000 pounds of LANIER's marihuana from San Francisco, California, to Warsaw, Kentucky.

47.   In or about April 1984, Eugene Dayle Brown went to San Francisco, California, to work for Ronald Harris Ball in distributing the 165,000 pounds of marihuana.

48.   In or about April 1984, Conrad C. Ingold and Clifford J. Rylands traveled to Harold G. Merrill's "stash warehouse" in Warsaw, Kentucky, and assisted Merrill, Bryan Paul Brown, Eugene Dayle Brown, Carole Ann Young, Ronald Harris Ball and an unknown representative of RANDY THOMAS LANIER in the unloading of approximately 25,000 pounds of marihuana from a tractor/trailer truck.   Young kept a tally of the bales and the division of the marihuana on a 16-inch legal pad.

49.   In or about April 1984, the approximate 25,000 pounds of marihuana in Harold Gregory Merrill's warehouse at Warsaw, Kentucky, was separated into stacks by Conrad C. Ingold, Eugene

Dayle Brown, Harold Gregory Merrill, Bryan Paul Brown, Ronald Harris Ball and Carole Ann Young.

50. In or about April 1984, Conrad C. Ingold received approximately 10,000 pounds of LANIER's marihuana which he purchased from Ronald Harris Ball. Ball and Ball's brother, Charles Theodore Ball, received the remainder of the marihuana.

51. In the spring of 1984, Harold Gregory Merrill received $5 per pound from Ronald Harris Ball and Conrad C. Ingold for storing the approximate 25,000 pounds of marihuana in his warehouse at Warsaw, Kentucky. Ingold paid Merrill $50,000 and Ball paid Merrill approximately $75,000.

52. In or about April 1984, Conrad C. Ingold sold 3,000 pounds of the marihuana to Bryan Paul Brown.

53. In or about April 1984, Rodney E. Carl a/k/a Jonica obtained marihuana from Ronald Harris Ball at Warsaw, Kentucky.

54. In or about April 1984, Charles Theodore Ball had one of his marihuana customers drive a rental truck to Harold Gregory Merrill's marihuana stash warehouse in Warsaw, Kentucky, and pick up 4,000 to 5,000 pounds of marihuana.

55. In or about April 1984, Dale Patrick Maloney and David Allen Neddeff purchased approximately 27,000 pounds of marihuana from Jeffrey Ellis Tuchband and David Maurice Tobias.

56. In or about April 1984, Charles Victor Podesta acted as a representative of RANDY THOMAS LANIER in the sale of 27,000 pounds of marihuana sold to Dale Patrick Maloney and David Allen Neddeff, which was delivered to a stash house in Niles,

Michigan. Podesta inventoried the marihuana as it was unloaded from a tractor trailer truck into the warehouse. Podesta was paid $1,000,000 in U.S. currency by Maloney as a down payment on the marihuana.

57. During the period April, May, and June 1984, three 800 pound truck loads of marihuana sold by Conrad C. Ingold were picked up by Clifford Rylands at the warehouse of Harold Gregory Merrill in Warsaw, Kentucky, and delivered to Earl Dean Bond in St. Louis, Missouri, and Jerry Lee Juenger in Millstadt, Illinois, in the Southern District of Illinois.

58. In or about April 1984, Bryan P. Brown delivered approximately 2,000 pounds of marihuana from Harold Gregory Merrill's warehouse at Warsaw, Kentucky, to Robert Reid Barbor, in West Virginia. Brown was paid by Conrad C. Ingold to deliver the marihuana.

59. During the period April through July 1984, Clifford J. Rylands picked up U.S. currency on at least six occasions from Earl Dean Bond and Jerry Lee Juenger at Millstadt, Illinois, in the Southern District of Illinois, and transported this currency to Conrad C. Ingold in New Orleans, Louisiana.

60. In the summer of 1984, Carold Ann Young transported approximately $1,000,000 in U.S. currency on one occasion and $500,000 in U.S. currency on another occasion from Conrad C. Ingold in New Orleans, Louisiana, to Ronald Harris Ball in payment for marihuana originally provided by RANDY THOMAS LANIER.

61.   In the summer of 1984, Carole Ann Young and Clifford J. Rylands transported between 1.2 and 1.3 million dollars in U.S. currency from Conrad C. Ingold in New Orleans, Louisiana, to Ronald Harris Ball in Florida.

62.   During the fall of 1984, Clarence S. Massie picked up two truck loads of marihuana (approximately 1,000 to 2,000 pounds) from Ronald Harris Ball at Ball's residence in Pompano Beach, Florida.

63.   In the fall of 1984, Clarence S. Massie picked up a truckload of approximately 1,000 to 1,200 pounds of marihuana from James Harold Blair at Blair's residence, 3800 Lyons Road, Coconut Creek, Florida, and delivered the marihuana to Jerry Lee Juenger in Millstadt, Illinois, in the Southern District of Illinois.

64.   During the year 1984, Conrad C. Ingold purchased approximately 12,000 pounds of marihuana from Ronald Harris Ball paying Ball approximately $4,560,000 in currency.

65.   On or about April 14, 1984, Charles Victor Podesta, using the alias "Charles De Carlo" entered into a $1,800 per month lease contract for a residence located at 11550 S.W. 22nd Court, Davie, Florida, for the period April 14, 1984, through April 14, 1985.   Podesta paid $5,400 in U.S. currency and/or money orders for a security deposit and the first and last months rent.   From May 1984 to February 1985, Podesta made monthly rent payments of $1,800 in U.S. currency or money orders.

66. On or about May 7, 1984, Charles Victor Podesta caused the telephone at his residence, 11550 S.W. 22nd Court, Davie, Florida, to be installed in the name of "Charles De Carlo."

67. On or about April 27, 1984, Ronald Harris Ball purchased a 1984 Volvo priced at $24,875 in the maiden name of his wife, Leslie Larkin and paid $10,000 in the form of six American Express money orders, one for $5,000 and five for $1,000 each.

68. On or about August 10, 1984, Ronald Harris Ball purchased a 1984 BMW automobile valued at $40,358.75 and caused the title and license to be registered in the name of Margaret E. Young, the mother of Carole Ann Young. Ball made a $22,345.75 payment with $7,345.75 in U.S. currency and two $7,500 cashier checks purchased with the name "Margaret Young" as remitter.

69. On or about May 5, 1984, Carold Ann Young purchased a 1984 Volvo priced at $15,526 and caused the title and license, to be registered in her mother's name, Margaret E. Young. Young made a payment of $12,900 with $6,980 in U.S. currency, eight U.S. Postal money orders of $500 each, and two personal money orders of $1,000 each.

70. On or about July 27, 1984, Ronald Harris Ball purchased a residence located at 6251 N.W. 63rd Way, Parkland, Florida, for $160,000. Ball caused the title to be recorded in the names of his mother, Virginia C. Ball, and his mother-in-law, Martha (Macy) Reynolds.

71.    Between July 27, 1984, and October 9, 1984, Ronald Harris Ball made payments on the purchase of the residence at 6251 N.W. 63rd Way, Parkland, Florida, in the amount of $98,959.45 with $1,000 in U.S. currency and $97,959.45 in 26 cashier's checks and money orders.

72.    During the fall of 1984, Clarence S. Massie met with Ronald Harris Ball in South Florida and delivered $200,000 to $300,000 in U.S. currency for marihuana to Ball.

73.    In or about January 1985, Ronald Harris Ball and James Harold Blair traveled to New Orleans, Louisiana, and met Conrad C. Ingold for the purpose of locating and renting two warehouses to use in the unloading of over 150,000 pounds of marihuana from a freighter that was to come into New Orleans, Louisiana, in the spring of 1985.

74.    On or about February 14, 1985, Ronald Harris Ball caused the leasing of a warehouse at 3715 Tchoupitoulas Street, New Orlaeans, Louisiana, in the ficticious company name "Rayco Freight and Transport, Inc." by David Chain who used the name "Arnold Harris."

75.    On or about January 11, 1985, Ronald Harris Ball caused David Chain to lease a warehouse at 421 Iris Street, Jefferson, Louisiana, in the ficticious name "Envco and Mr. David Le Charles."

76.    In or about February 1985, Conrad C. Ingold arranged for Garnett Hardin to work for Ronald Harris Ball to repair and clean a warehouse at 3715 Tchoupitoulas Street, New Orleans,

Louisiana, which was later used to receive and distribute a large shipment of marihuana. Ball agreed to pay Hardin $10,000 initially, and $15,000 after the marihuana shipment was received and distributed. Hardin was paid $25,000 in the form of 150 pounds of marihuana.

77.     In or about mid March 1985, RANDY TOMAS LANIER inspected the warehouse at 3715 Tchoupitoulas Street, New Orleans, Louisiana, with Ronald Harris Ball and James Harold Blair.

78.     In or about April 1985, RANDY THOMAS LANIER imported approximately 150,000 pounds of marihuana into the United States through New Orleans, Louisiana.

79.     In or about April 1985, RANDY THOMAS LANIER distributed 54,000 pounds of marihuana to Jeffrey Ellis Tuchband and David Maurice Tobias.

80.     In or about April 1985, Dale Patrick Maloney purchased approximately 27,000 pounds of marihuana from Jeffrey Ellis Tuchband and David Maurice Tobias paying them approximately $8,000,000 in U.S. currency. The marihuana was delivered to Niles, Michigan from New Orleans, Louisiana, by Bill Bohannon, a driver for Tuchband and Tobias.

81.     In or about April 1985, Dana Mark Cox purchased approximately 3,000 pounds of marihuana from Dale Patrick Maloney.

82.     In or about April 1985, Eugene Dayle Brown assisted Ronald Harris Ball's driver in transporting a semi-trialer load

25

of marihuana from the warehouse at 3715 Tchoupitoulas Street, New Orleans, Louisiana, to Harold Gregory Merrill's storage building in Warsaw, Kentucky. Brown was paid $50,000 by Ball.

83.   In or about April 1985, Conrad C. Ingold, Clifford J. Rylands, Ronald Harris Ball, Harold Gregory Merrill, Bryan Paul Brown, Eugene Dayle Brown, Carole Ann Young and an unknown representative of RANDY THOMAS LANIER and others helped unload a semi-trailer truck containing between 25,000 to 30,000 pounds of marihuana delivered to Harold Gregory Merrill's warehouse in Warsaw, Kentucky, from the warehouse at 3715 Tchoupitoulas Street, New Orleans, Louisiana.   The marihuana bales were weighed, tagged, and inventoried by Ball, Young and Lanier's representative after the 25,000 to 30,000 pounds of marihuana was unloaded.

84.   In or about April 1985, Ronald Harris Ball sold Conrad C. Ingold 12,000 pounds (at $390 per pound) of marihuana delivered to Harold Gregory Merrill's warehouse at Warsaw, Kentucky.   Ingold sold 3,400 pounds of the marihuana to Bryan Paul Brown.   The remaining marihuana was divided between Ball, who received 10,000 to 12,000 pounds and Ball's brother, Charles Theodore Ball, who received 5,500 to 6,000 pounds.

85.   In or about April 1985, Harold Gregory Merrill stored marihuana for RANDY THOMAS LANIER, Ronald Harris Ball, and Conrad C. Ingold.

86.   In 1985, Harold Gregory Merrill was paid $5 per pound by Conrad C. Ingold and Ronald Harris Ball for storing between

25,000 to 30,000 pounds of marihuana in his warehouse at Warsaw, Kentucky.

87.   In or about April 1985, Clarence S. Massie picked up one truckload of 1,400 pounds of marihuana from James Harold Blair at Blair's house, 3800 Lyons Road, Coconut Creek, Florida, at Ronald Harris Ball's instructions.  Massie delivered the marihuana to a "stash house," at Valley Forge, Pennsylvania.

88.   From in or about May through October 1985, Clifford J. Rylands picked up marihuana at Harold Gregory Merrill's warehouse in Warsaw, Kentucky, and delivered the marihuana to Jerry L. Juenger at Millstadt, St. Clair County, within the Southern District of Illinois.

89.   From in or about May through October 1985, Clifford Rylands picked up U.S. currency from Jerry Lee Juenger in Millstadt, Illinois, St. Clair County, within the Southern District of Illinois and transported this U.S. currency to Conrad C.  Ingold in New Orleans, Louisiana.

90.   Between May through October 1985, Conrad C. Ingold and Clifford J. Rylands transported U.S. currency to Ronald Harris Ball in South Florida.  The payments ranged from $300,000 to 1.5 million dollars in U.S. currency.

91.   On or about July 5, 1985, Clifford J. Rylands delivered $280,000 in U.S. currency to James Harold Blair, at Blair's residence, 3800 Lyons Road, Coconut Creek, Florida.

92.   In 1985, Conrad C. Ingold paid Ronald Harris Ball approximately $4,680,000 in U.S. currency for the marihuana he

purchased from Ball and distributed from Harold Gregory Merrill's warehouse in Warsaw, Kentucky, in the spring of 1985.

93.   In August 1985, Bryan Paul Brown traveled on two occasions from Warsaw, Kentucky, to Millstadt, Illinois, within the Southern District of Illinois to deliver on each occasion 800 pounds of marihuana to Jerry Lee Juenger.

94.   In August 1985, Jerry Lee Juenger paid Bryan Paul Brown approximately $200,000 to $300,000 in U.S. currency.   The remainder of the U.S. currency payments were picked up from Juenger by Clifford J. Rylands.

95.   In or about September 1985, Clifford J. Rylands picked up U.S. currency payments from Jerry Lee Juenger in Millstadt, Illinois, within the Southern District of Illinois.

96.   In or about September 1985, Clifford J. Rylands picked up between $300,000 and $400,000 in U.S. currency from Jerry Lee Juenger in the Southern District of Illinois and delivered the currency to Bryan Paul Brown, Eugene Dayle Brown and Conrad C. Ingold at Tickfaw, Louisiana.

97.   In or about October 1985, Clifford J. Rylands delivered 339 pounds of marihuana originally purchased from Ronald Harris Ball to Jerry Lee Juenger in Millstadt, Illinois, in the Southern District of Illinois.

98.   On or about March 13, 1985, Bryan Paul Brown purchased a one-half interest in approximately 75.55 acres of farmland in the State of Louisiana for $75,000.

28

99.    On  or  about  August  30,  1985,  Ronald  Harris  Ball purchased  a  residence  at  7580  51st  Terrace  Northwest,  Pompano Beach,  Florida,  for  $163,000  and  caused  the  title  to  be  recorded in  the  name  of  Margaret  E.  Young,  mother  of  Carole  Ann  Young.

100.    In  or  about  August  30,  1985,  Ronald  Harris  Ball  caused a  payment  of  $15,000  to  be  made  for  the  previously  named residence  in  the  form  of  three  $5,000  cashier's  checks.

101.    On  or  about  October  9,  1985,  Carole  Ann  Young  and Margaret  E.  Young  opened  a  joint  personal  checking  account  at Landmark  First  national  Bank,  Ft.  Lauderdale,  Florida,  for  the purpose  of  the  purchasing,  making  monthly  mortgage  payments  and expending  money  in  connection  with  the  residence  at  7580  51st Terrace  North  West,  Pompano  Beach,  Florida,  purchased  by  Ronald Harris  Ball.

102.    During  the  period  October  9,  1985,  through  August  5, 1986,  $21,856  in  U.S.  currency  and  $27,500  in  cashier's  checks were  deposited  to  the  joint  personal  checking  account  of  Carole Ann  Young  and  Margaret  E.  Young.

103.    On  or  about  October  22,  1985,  Ronald  Harris  Ball  caused a  payment  to  be  made  for  the  purchase  of  the  residence  at  7580 51st  Terrace  North  West,  Pompano  Beach,  Florida,  with  a $24,417.48  cashier's  check,  purchased  with  a  personal  check drawn  on  the  joint  personal  checking  account  of  Carole  Ann  Young and  Margaret  E.  Young.

104.    From  on  or  about  November  22,  1985,  to  on  or  about January  22,  1987,  the  monthly  mortgage  payments  of  $1,265.21  for

the purchase of the residence at 7580 51st Terrace North West, Pompano Beach, Florida, were made by Carole Ann Young by personal checks drawn on the joint checking account of Carole Ann Young and Margaret E. Young, which were previously signed in "blank" by Margaret E. Young.

105.   On or about September 3, 1985, Harold Gregory Merrill purchased approximately 50 acres of undeveloped farmland adjacent to his residence in Warsaw, Kentucky, for approximately $22,000.

106.   In or about March 1986, Ronald Harris Ball caused David Chain, using the name "David Le Charles," to lease the warehouse at 421 Iris Street, Jefferson, Louisiana, in the name of "Envco, Inc., d/b/a American Containers Modification Company."

107.   In or about the spring of 1986, at the direction of Ronald Harris Ball, Conrad C. Ingold gave $20,000 in U.S. currency to Bryan Paul Brown to rent a tractor trailer truck for use in transporting a load of marihuana.

108.   In or about March 1986, Charles Victor Podesta caused the telephone at Lanier's residence, 11050 S.W. 25th Street, Davie, Florida, to be installed in the name "Margaret Grimme," the maiden name of the wife of Charles Victor Podesta.

109.   On or about May 14, 1986, Conrad C. Ingold sent Garnett Hardin to pick up marihuana from James Harold Blair, at 3800 Lyons Road, Coconut Creek, Florida.

110.   On or about May 14, 1986, Conrad C. Ingold gave $150,000 in U.S. currency to Garnett Hardin for delivery to

James Harold Blair as a down payment on the approximately 1,200 pounds of marihuana that was being purchased form Ronald Harris Ball.

111.   On or about May 14, 1986, Conrad C. Ingold made arrangements to sell 300 pounds of this marihuana to Jerry Lee Juenger who was to distribute the marihuana in St. Clair and Madison Counties within the Southern District of Illinois.

112.   In or about January 1987, Charles Victor Podesta, using the ficticious name "Anthony Fazio" rented a residence located at 2202 Bay Drive, Lighthouse Point, Florida, for $2,500 per month.

113.   On January 30, 1987, Charles Victor Podesta attempted to obtain a State of Florida drivers license in the ficticious name "Anthony Fazio."

114.   On January 30, 1987, Charles Victor Podesta had in his possession $17,000 in U.S. currency and notebooks containing coded marihuana financial transactions and expenses incurred on behalf of RANDY THOMAS LANIER and himself.

115.   In or about November 1986, Jeffrey Ellis Tuchband and David Maurice Tobias purchased 75,300 pounds of marihuana at $330 per pound, for a total of $24,849,000 from Charles Victor Podesta and RANDY THOMAS LANIER.

116.   During the period November 1986 through January 1987, Jeffrey Ellis Tuchband and David Maurice Tobias made a $19,478,000 partial payment to Charles Victor Podesta and RANDY THOMAS LANIER for marihuana.

117.   In or about November 1986, Ronald Harris Ball purchased approximately 31,945 pounds of marihuana from Charles Victor Podesta and RANDY THOMAS LANIER.

118.   During the period November 1986 through January 1987, Ronald Harris Ball paid $6,839,000 in U.S. currency to Charles Victor Podesta and RANDY THOMAS LANIER.

119.   In or about November 1986, Jim Marcum purchased approximately 19,484 pounds of marihuana from Charles Victor Podesta and RANDY THOMAS LANIER.

120.   During the period November 1986 through January 1987, Jim Marcum paid $4,840,000 in U.S. currency to Charles Victor Podesta and RANDY THOMAS LANIER.

121.   On five separate occasions RANDY THOMAS LANIER caused false Federal Income Tax Returns for the years 1981, 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include income from his distribution of marihuana.

122.   On four separate occasions David Maurice Tobias caused false Federal Income Tax returns for the years 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include all income from his distribution of marihuana.

123.   On four separate occasions Jeffrey Ellis Tuchband caused false Federal Income Tax returns for the years 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal

Revenue Service in that said returns did not include all income from his distribution of marihuana.

124.    On five separate occasions Bryan Paul Brown caused false federal Income Tax returns for the years 1981, 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include income from his distribution of marihuana.

125.    On five separate occasions Eugene Dayle Brown caused false Federal Income Tax returns for the years 1981, 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include income from his distribution of marihuana.

126.    On three separate occasions Charles Victor Podesta caused false Federal Income Tax returns for the years 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include income from his distribution of marihuana.

127.    On four separate occasions James Harold Blair caused false Federal Income Tax returns for the years 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include income from his distribution of marihuana.

128.    In or about June or July of 1986, Carole Ann Young, caused false Federal Income Tax returns for the years 1983, 1984, and 1985 to be prepared and filed with the Internal

33

Revenue Service in that said returns did not include income from her distribution of marihuana.

129.    On two separate occasions in the year 1986, Charles Theodore Ball, caused false Federal Income Tax returns for the years 1984 and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include all income from his distribution of marihuana.

130.    On one occasion in the year 1986, Dana Mark Cox caused a false Federal Income Tax return for the year 1985 to be filed with the Internal Revenue Service, in that said return did not include all income from his distribution of marihuana.

131.    On four separate occasions Roberto Faxas, using the name Robert Faxas, caused false Federal Income Tax returns for the years 1982, 1983, 1984, and 1985 to be prepared and filed with the Internal Revenue Service in that said returns did not include all income from his distribution of marihuana.

In violation of Title 18, United States Code, Section 371.

A TRUE BILL

_Connie Dodson_
FOREPERSON

_Michael C_
UNITED STATES ATTORNEY

Recommended Bond:

Detention - Randy Thomas Lanier, Benjamin Barry Kramer, George Paul Brock and Eugene Albert Fischer

$100,000 cash on William R. Palumbo and Robert Ellsworth Wood, Jr.

$150,000 cash on Kay Dee Bell, Jr.

34